IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: CINTAS CORP. OVERTIME PAY
ARBITRATION LITIGATION

No. C 06-1781 SBA

**AMENDED SUGGESTION OF REMAND ORDER**

## BACKGROUND

*Veliz v. Cintas*, No. 03-1180 SBA, was filed in May 2003 as a class action and collective action on behalf of Service Sales Representatives (SSR's) employed by Cintas. The SSR's sought overtime and back pay under the Fair Labor Standards Act (FLSA) and various state laws.

Cintas moved to compel arbitration and, on April 5, 2004, this Court issued an Order compelling 56 of the 65 Plaintiffs subject to Cintas' Motion to arbitrate their claims. On May 4, 2004, Plaintiffs filed a Demand for Classwide Arbitration with the American Arbitration Association (AAA) in San Francisco. This Demand was filed by Veliz and nine other named claimants, "on behalf of themselves and all others similarly situated." Dosker Decl. Ex. 1. The letter attached to the AAA form stated that "[t]his demand for arbitration is also made on behalf of all individuals who filed, or who hereafter file, Consents to sue in *Veliz*, *except those* whom Judge Armstrong has ruled may litigate their FLSA claims in federal court." Pepich Decl. Ex. N. Cintas did not object to the clause construction phase of the arbitration taking place in San Francisco.[1] *See id.* Ex. P.

On May 4, 2005, this Court issued an Order clarifying its April 5 Order. In the clarification, the Court held that the question of whether the agreements at issue permit arbitration on a class or collective basis is for the Arbitrator, not the Court, to decide in the first instance. *Id.* May 4, 2005

---

[1] The AAA's Rules provide for four phases in a demand for class or collective arbitration: (1) the clause construction phase, in which the arbitrator decides whether the parties' contract allows for class actions, (2) the class certification phase, (3) the class notification phase, and (4) the merits phase.

Order at 9-10 (citing *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452-53 (2003)). Whether the *Veliz* Plaintiffs who are parties to the arbitration are permitted to arbitrate their claims on a class or collective basis is a question still pending before the Arbitrator.[2]

Approximately 2,400 Plaintiffs opted in to the litigation. On June 6, 2005, Cintas filed a Motion to Stay further litigation under Section 3 of the FAA as to approximately 1,900 of these Plaintiffs, who had signed arbitration agreements and who had not already been compelled to arbitrate. On February 14, 2006, this Court granted the motion, and stayed further proceedings until each of these Plaintiffs (hereinafter "Stay Motion Plaintiffs") had arbitrated their disputes with Cintas "in accordance with the terms of the agreement" into which they entered.[3]

Soon thereafter, Cintas filed 70 separate actions in different district courts, each of which is a motion to compel arbitration by Cintas against a *Veliz* Plaintiff. The Judicial Panel on Multidistrict Litigation ("MDL Panel") transferred these actions to this Court for "coordinated or consolidated pretrial proceedings." In other words, the instant MDL consists of 71 actions, the first-filed of which is *Veliz v. Cintas*. Every Respondent in the MDL cases is one of the Plaintiffs in *Veliz*.[4] Cintas seeks to compel these individuals to arbitrate their claims, not in the Northern District of California, but in the district where the motion to compel was filed and where the individual is or was employed by Cintas.

The MDL Panel's Transfer Order states that resolution of the 70 actions will require the Court "to construe identical contractual arbitration clauses to determine i) whether the parties named in each motion to compel are refusing to arbitrate within the meaning of § 4 of the Federal Arbitration Act, and/or ii) whether the parties are complying with that obligation by seeking to

---

[2]The Arbitrator issued a Clause Construction Award, and the parties filed cross-motions to confirm in part and vacate in part the award. On December 5, 2005, this Court remanded to the Arbitrator for clarification of the award. On December 20, 2005, Cintas filed a Notice of Appeal of that Order.

[3]In so ruling, the Court held that the Stay Motion Plaintiffs' arbitration agreements are enforceable. *See, e.g.*, Request for Judicial Notice Ex. 4 (transcript of hearing on Motion to Stay at 6).

[4]Approximately 1,800 *Veliz* Plaintiffs are Respondents in the 70 actions of which the MDL is composed. Each action involves a subset of the 1,800 individuals who signed agreements with the same place-of-arbitration clause.

2

arbitrate collectively in an arbitration already occurring in the Northern District of California involving a subset of the *Veliz* plaintiffs." Transfer Order at 1-2.

On October 27, 2006, this Court ordered the parties to file briefs in support of their respective positions on those questions. Based on the briefing, the Court now finds that it is appropriate to REMAND the MDL cases to the transferor courts for further proceedings.[5]

## **ANALYSIS**

### **1. Requests for Judicial Notice**

Cintas requests judicial notice of the following documents contained in the record of *Veliz v. Cintas*, No. 03-1180 SBA: (1) this Court's September 26, 2005 Order, docket no. 500; (2) a stipulation and joint statement of the parties in response to the September 26, 2006 Order, docket no. 501; (3) excerpts from the transcript of a hearing before this Court on October 18, 2005; (4) excerpts from the transcript of a hearing before this Court on October 27, 2005; (5) this Court's February 14, 2006 Order, docket no. 516; (6) this Court's May 4, 2005 Order, docket no. 426; (7) a minute entry recording the results of the hearing before this Court on October 27, 2005, docket no. 514; (8) this Court's April 5, 2004 Order, docket no. 140; (9) a one-page excerpt from Veliz's Opposition to Cintas' Motion to Stay Proceedings, docket no. 477; and (10) a one-page excerpt from Veliz' Motion Concerning Compliance with Court Orders, docket no. 451.

Under Federal Rule of Evidence 201(b), the Court may take judicial notice of documents "capable of accurate and ready determination." A court may take judicial notice of its own records in other cases. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). Accordingly, the Court GRANTS Cintas' Request for Judicial Notice with respect to these documents.

Cintas also requests judicial notice of a copy of each Respondent's employment agreement, which was submitted as an exhibit in each of the 70 MDL cases. "Such documents are part of the files that are in the record of this Court in the cases which are Member Cases under the above-captioned Lead Case and which are listed on the Appendix hereto." Request for Judicial Notice

---

[5]On January 9, 2007, Respondents filed an application for leave to file a reply brief [Docket No. 23]. Although the Court's Order regarding briefing did not give Respondents an opportunity to reply, leave to file is GRANTED. However, having read and considered the arguments made in Respondents' reply brief, the Court's decision on this matter is unchanged.

3

(RJN) at ¶ 9. Finally, Cintas requests judicial notice of the Stipulation and Order "which addresses service of process among other matters" on file in 67 of the 70 MDL cases. RJN at ¶ 10. Cintas includes an exemplar of such Stipulation and Order, which was filed in the United States District Court for the District of Rhode Island, Case No. 06-112S. Cintas "offers to put into the Court's Lead Case file copies of all the items referred to in paragraphs 9 and 10," but suggests granting judicial notice "so as to avoid filling the Court's files with copies that together would be quite voluminous and duplicative." *Id.* at ¶ 13.

Because these documents are part of this Court's files, they are certainly "capable of accurate and ready determination." Respondents have voiced no objection. Therefore, Cintas' Request for Judicial Notice is GRANTED.

Cintas submitted a supplemental Request for Judicial Notice along with its reply brief. In it, Cintas requests judicial notice of twelve other documents contained in the record of *Veliz v. Cintas*. For the same reasons stated above, the request is GRANTED.

**2. Questions posed by this Court's October 28, 2006 Order**

    i.    Are the parties named in each Motion to Compel refusing to arbitrate within the meaning of § 4 of the FAA?

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Each of the transferor courts in this MDL, in deciding whether Cintas has the right to move to compel arbitration, would have to decide whether Respondents have refused to arbitrate. *See PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1066 (3d Cir. 1995) (holding that "an action to compel arbitration under the Federal Arbitration Act accrues only when the respondent unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject matter of the dispute"); *Kim v. Colorall Technologies, Inc.*, 2000 WL 1262667 at *1 (N.D. Cal. 2000) (Walker, J.) (citing

4

*PaineWebber*). Accordingly, the MDL panel has instructed this Court to make that determination.

Cintas argues that the Respondents have failed, neglected, or refused to arbitrate because they have sought to litigate their claims in the *Veliz* action. In support of this theory, Cintas points to case law holding that when a party commences litigation in court, that constitutes a refusal to arbitrate. *See PaineWebber*, 61 F.3d at 1068; *Roque v. Applied Materials, Inc.*, 2004 WL 1212110 at *4 (D. Or. 2004) ("By filing a complaint in court, a party gives the adverse party actual notice of a refusal to arbitrate sufficient to satisfy § 4 of the FAA."). According to Cintas, by filing consents to sue (and thus becoming party Plaintiffs) in the *Veliz* action, Respondents have "commenced litigation." They have also done so by seeking "affirmative relief in litigation in the *Veliz* Action by moving for an Order seeking to preemptively invalidate or otherwise not have to comply with the place-of-arbitration term in each of their arbitration agreements." Cintas' Brief at 11. Here, Cintas is referring to the fact that Respondents, in their capacity as *Veliz* Plaintiffs, resisted Cintas' Motion to Stay and urged this Court to compel arbitration in this district. See RJN Ex. 5 (February 14, 2006 Order).

Further, Cintas points out that prior to this Court's April 5, 2004 Order compelling arbitration, the *Veliz* Plaintiffs vigorously opposed enforcement of the arbitration agreements. Finally, Cintas asserts that Respondents have refused to arbitrate by stating repeatedly in the *Veliz* action that they object to, and reserve rights to seek appellate relief against, having to arbitrate. For example, at the October 27, 2005 hearing on Cintas' Motion to Stay, the following exchange took place:

Court: Why are you asking me to compel arbitration for 1700 people that there is no dispute must arbitrate other than a strategic desire to have them in one location, which I don't consider the court objective here.

Mr. Pepich: Because, your honor, we would not agree with Cintas that these people have to arbitrate.

Mr. Pepich acknowledged that the Court's April 5 Order extended to the opt-in Plaintiffs, but stated that he disputed the Court's analysis. RJN Ex. 4. *See also* RJN Ex. 10 (Plaintiffs' Opposition to Cintas' Motion to Stay, stating that "Even though plaintiffs' cross-motion applies the Court's prior

5

arbitrability rulings, plaintiffs expressly reserved any and all appellate rights with respect to those arbitrability issues, including whether Cintas' arbitration agreements are unconscionable and unenforceable in whole or in part.").

Respondents deny that they are refusing to arbitrate within the meaning of § 4. On the contrary, Respondents assert, "[t]hey are actively seeking to arbitrate in the Northern District of California in connecting with the presently pending arbitration." Respondents' Brief at 2.

Cintas provides no legal authority for the notion that the *Veliz* Plaintiffs' response to Cintas' Motion to Stay constitutes a refusal to arbitrate – this is properly characterized not an affirmative initiation of litigation, but rather as an attempt to control the place of arbitration. However, the reasoning of *PaineWebber* and *Roque* persuades this Court that the MDL Respondents' decision to affirmatively opt in to the *Veliz* litigation as Plaintiffs rather than pursuing arbitration constitutes a refusal to arbitrate. *See First Family Financial Services v. Fairley*, 173 F. Supp. 2d 565, 572 (S.D. Miss. 2001) ("The Court cannot conceive of a more explicit refusal to arbitrate than the bringing of an arbitrable claim" in court). Further, Cintas is correct that Respondents only attempted to join the ongoing arbitration in this District after this Court rejected their argument (advanced in their capacity as *Veliz* plaintiffs) that the arbitration clauses should not be enforced. Cintas is also correct that Respondents have voiced their resistance to arbitration at various stages of the *Veliz* litigation.

However, Cintas' stronger argument is that Respondents have refused to arbitrate within the meaning of section 4 by pursuing arbitration in the Northern District of California, rather than the fora specified in their arbitration agreements.

ii. Are the parties complying with their obligation to arbitrate by seeking to arbitrate collectively in an arbitration proceeding already occurring in the Northern District of California involving a subset of the *Veliz* plaintiffs?

Cintas argues that by attempting to arbitrate in San Francisco, Respondents have refused to arbitrate. Cintas argues that an attempt to arbitrate in a forum other than the one identified in the place-of-arbitration clause is a refusal to arbitrate "in accordance with the terms of the agreement." Cintas' Brief at 12-13. In support of this theory, Cintas relies on *Bear, Stearns & Co., Inc. v. Bennett*, 938 F.2d 31, 32 (2nd Cir. 1991). In that case, the agreement specified New York City as the place of arbitration. Bennett filed a demand for arbitration in Florida, and Bear Stearns filed a

petition in the Southern District of New York to compel arbitration in New York City. Without explicitly addressing whether Bear Stearns was "aggrieved" within the meaning of section 4 or Bennett had refused to arbitrate, the court granted the petition to compel, because "Congress has directed the district courts to order that arbitration proceed 'in accordance with the terms of the agreement.'" *Id.* Cintas also relies on *Sterling Financial Investment Group, Inc. v. Hammer*, 393 F.2d 1223 (11th Cir. 2004), in which the agreement specified Florida as the place of arbitration but one party initiated arbitration in Texas. The court held that the district court properly stayed the Texas arbitration and compelled arbitration in Florida pursuant to section 4, but again, the court did not say anything about whether the party had unequivocally refused to arbitrate.

*Bear Stearns* and *Sterling* provide support for Cintas' position that Respondents' efforts to arbitrate in California constitute refusal to arbitrate within the meaning of section 4 of the FAA. Although Cintas does not identify any cases in which a party agreed to proceed with arbitration in a forum other than that designated in the contractual place-of-arbitration clause, but resisted arbitration in the contractually-specified forum, and the court squarely held that the party had "refused" to arbitrate within the meaning of section 4, this Court is persuaded that such conduct transgresses section 4.

Respondents argue that they have not refused to arbitrate by pursuing collective arbitration in San Francisco. They point out that each of the Motions to Compel Arbitration at issue in this MDL state that "Plaintiffs in the Northern California Action . . . did not deny that they were required to arbitrate their FLSA claims against Cintas" and that they have "stated on the record in the Northern California Action that they would seek to have the claims heard in arbitration in Northern California." Thus, Respondents contend, Cintas has, in essence, admitted that they are not refusing to arbitrate. Further, Respondents cite several cases holding that where a party agrees to arbitrate in one venue, the opposing party is not "aggrieved" for purposes of § 4 because there is no refusal to arbitrate. *See, e.g., Broadcort Capital Corp. v. Dutcher*, 859 F. Supp. 1517, 1520 (S.D.N.Y. 1994) (holding that, where party refused to arbitrate in one forum but was attempting to proceed with arbitration in another forum, there was no refusal to arbitrate); *Scan-Graphics, Inc. v. Photomatrix Corp.*, 1992 WL 2231 (E.D. Pa. 1992) (same). However, neither of these cases, nor the other cases

7

cited by Respondents, involved arbitration agreements with place-of-arbitration clauses. Thus, they are not directly applicable to the instant case.

Because there does not appear to be any controlling Supreme Court or Ninth Circuit authority, the Court must decide which is more persuasive: the cases cited by Respondents, which stand for the proposition that so long as the party is amenable to arbitration somewhere, he or she has not refused to arbitrate and a motion to compel should not be entertained; or the cases cited by Cintas, which stand for the proposition that a party refuses arbitration when he or she attempts arbitration in a forum other than that specified in the arbitration agreement, and/or when he or she initiates litigation in court. In the Court's view, the latter are more consistent with the language of section 4, which speaks of a party's failure or refusal to arbitrate <u>under a written agreement for arbitration</u>. If the written agreement contains a place-of-arbitration clause, then logically, a party's attempt to arbitrate elsewhere is a refusal to arbitrate under the agreement. This interpretation is also more consistent with the Supreme Court's admonition that private agreements to arbitrate should be enforced according to their terms. *See Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 479 (1989).

Accordingly, the Court finds that Respondents have refused to arbitrate within the meaning of section 4 of the FAA.

Respondents have also included, as part of their brief in response to this Court's Order, a Motion to Dismiss Cintas' motions to compel arbitration.

According to Respondents, the issue of where they may arbitrate is squarely within the authority of the Arbitrator. *See Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452-53 (2003) (holding that aside from certain "gateway matters," such as the validity and applicability of the arbitration clause, issues of contract interpretation and arbitration procedures should be left to the arbitrator to decide); *Richard C. Young & Co., Ltd. v. Leventhal*, 389 F.3d 1, 4-5 (1st Cir. 2004) (holding that a dispute over the interpretation of a forum selection clause must be decided by the arbitrator: "[s]ince the dispute between the parties is concededly arbitrable, determining the place of the arbitration is simply a procedural matter and hence for the arbitrator").

Respondents argue that this Court should dismiss the motions to compel for lack of subject

matter jurisdiction, because "neither this Court nor any of the 70 courts where these petitions were originally filed has subject matter jurisdiction to decide in the first instance the clause construction issue at the heart of Cintas' 70 petition cases." Respondents' Brief at 12. In other words, Respondents argue that it is clear that they must arbitrate, the only question is where, and that is a question for the arbitrator to answer. In support of this theory, Respondents cite a case in which a petition to compel arbitration was dismissed under Federal Rule of Civil Procedure 12(b)(1), because the court found that the adverse party had not failed, neglected, or refused to arbitrate. *Hartford Accident & Indem. Co. v. Equitas Reinsurance Ltd.*, 200 F. Supp. 2d 102, 104 (D. Conn. 2002). This case does not support Respondents' argument, because the Court has held that Respondents have failed, neglected or refused to arbitrate. Next, Respondents contend that the Court could dismiss under Rule 12(b)(3), on the ground that the issues raised by Cintas are reserved for the arbitrator. They cite several out-of-circuit district court cases in support of this theory. *See, e.g., Metropolitan Life Ins. Co. v. O'Malley*, 392 F. Supp. 2d 1042, 1044-45 (N.D. Ill. 2005). However, that case did not involve dismissal of a petition to compel arbitration, and Respondents mischaracterize its holding. The case stands for the straightforward principle that where the parties have agreed to arbitrate, federal court is an improper venue and the case should be dismissed; it did not hold that the location of arbitration must be decided by the arbitrator and not the Court, as Respondents suggest. *See* Respondents' Brief at 13.

Further, the 1,800 Respondents are not parties to the ongoing San Francisco arbitration. At most, 102 Veliz Plaintiffs compelled to arbitrate by this Court are part of the ongoing arbitration.[6] The arbitrator held in the initial clause construction award that the 1,900 opt-in Plaintiffs could not become parties to the arbitration in this district, because that would be inconsistent with the place-of-arbitration term in their agreements. Although this Court has remanded to the arbitrator for clarification of the award (and Cintas has appealed that Order), that portion of the award was not

---

[6] Cintas argues that only ten *Veliz* Plaintiffs are parties to the arbitration, because only ten individuals were named in the Demand for Arbitration. However, these individuals purported to demand arbitration on behalf of themselves and all others similarly situated – which would arguably include all 56 *Veliz* Plaintiffs compelled to arbitrate. The *Veliz* Plaintiffs never moved for leave to amend the Demand for Arbitration. *See* Dosker Decl. at ¶ 17; *id*. at Ex. 6.

9

unclear, and the arbitrator may not revisit it. Thus, the interpretation of Respondents' arbitration agreements is not before the arbitrator, and the *Bazzle* line of cases is inapposite.

Respondents also argue that this Court should invoke the doctrine of judicial estoppel. This doctrine bars litigants from asserting inconsistent positions in the same litigation. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). According to Respondents, "Cintas' current position that the clause construction issue should be resolved in 70 different jurisdictions is clearly inconsistent with its previous position that the clause construction issue should be decided in the San Francisco arbitration." Respondents' Brief at 16. Cintas asserts that this argument misrepresents the record, in that it has always maintained that there can be no class or collective arbitration because the place-of-arbitration term in each agreement is enforceable. "Thus, while Cintas agreed that, if the AAA held clause construction proceedings as to the ten (10) individual named claimants . . . it could do so in San Francisco, it was certainly not giving up any statutory rights in the bargain – and certainly gave up nothing vis-a-vis those who are now Respondents here but who have never been parties to the *Veliz* Arbitration." Cintas' Reply at 14. The Court agrees with Cintas and will not apply judicial estoppel here: the fact that Cintas agreed to clause construction proceedings in San Francisco for the original group of Veliz Plaintiffs compelled to arbitrate is not inconsistent with its current position that the opt-in Plaintiffs (MDL Respondents) should not be allowed to arbitrate collectively in San Francisco.

Moreover, given that Respondents have refused to arbitrate with the meaning of section 4, the transferor courts do have jurisdiction over the petitions to compel arbitration, and Respondents' Motion to Dismiss must be denied on the merits.

Thus, Respondents' Motion to Dismiss the 70 MDL cases is DENIED.

## **CONCLUSION**

The Court holds that Respondents are refusing to arbitrate within the meaning of section 4 of the FAA.

Accordingly, the Court finds and rules as follows:

(1) Common discovery and other coordinated pretrial proceedings in the cases listed on Schedule A have been completed. All remaining issues are case-specific, and best determined by

10

the transferor court.

(2) The cases will not benefit from further coordinated proceedings as part of MDL 1781, and are ready to be remanded to their respective transferor jurisdictions. Pursuant to Rule 7.6 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, the Court issues its Suggestion of Remand Order in the cases listed on Schedule A.

The Clerk is ORDERED to provide copies of this Order to the Clerk of the Judicial Panel on Multidistrict Litigation and to the clerks of the transferor district courts.

IT IS SO ORDERED.

Dated: 4/10/07

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge